# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Stephanie B., | Case No. 22-cv-837 (JWB/DTS) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Kilolo Kijakazi,<br>*Acting Commissioner of Social Security,* | |
| Defendant. | |

Claimant Stephanie B. appeals the denial of her application for benefits under Titles II and XVI of the Social Security Act. Plaintiff's Mem. of Law in Support of Mot. for Summary Judgment (Pl. Mem.) at 1; Dkt. No. 20. Her claim was denied initially and on reconsideration. She requested and received review by an Administrative Law Judge (ALJ), who determined Claimant was not eligible for benefits. Administrative Record (Admin. Rec.) at 12-27; Dkt. No. 16. The Social Security Appeals Council denied Claimant's request for review. Admin. Rec. at 6; Dkt. No. 16. This appeal to district court followed.

Claimant makes two arguments in support of her appeal. First, she alleges the ALJ did not properly consider the supportability of the medical opinions provided in the record. Pl. Mem. at 20; Dkt. No. 20. Second, she contends the ALJ did not give proper weight to medical opinions she found persuasive when determining the Claimant's residual functional capacity (RFC). *Id.* at 13.

Based on its review of the record, the Court recommends that the ALJ's decision be affirmed for the reasons set forth below.

## BACKGROUND

**I.     Procedural History**

Claimant originally alleged disability beginning in January 2016, then amended that onset date to January 2018. Admin. Rec. at 286, 396; Dkt. No. 16. She had a history of diagnosed mental health problems from as long ago as January 2017, including likely borderline personality disorder, unspecified episodic mood disorder, substance use disorders, depression, anxiety, and ADHD. *Id.* at 446-450. In addition to her mental health struggles, she claimed disability because of sleep apnea, spinal arthritis, and AIDS. *Id.* at 370.

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

At Step 1, ALJ Lauren Burstein determined Claimant had not engaged in substantial gainful employment since the date of her alleged disability onset. Admin. Rec. at 17; Dkt. No. 16. At Step 2, the ALJ determined Claimant has several severe impairments: depressive disorder, anxiety disorder, borderline personality disorder, attention deficit hyperactivity disorder, post-traumatic stress disorder, and substance abuse disorder. *Id.* at 18. Even so, the ALJ found at Step 3 that those impairments,

considered individually or taken together, did not meet the severity of any impairment listed in 20 C.F.R. § 404. *Id.* at 18-20. Claimant does not challenge these findings.

At Step 4, the ALJ determined Claimant has the following RFC:

> Perform full range of work at all exertional levels but with the following nonexertional limitations: the claimant can concentrate, persist, and remain on pace while doing simple routine tasks. The claimant can adapt and manage a low-stress work environment, defined as having little or no workplace changes, no fast-paced production work, only simple work-related decisions, and no tandem tasks. The claimant is limited to only brief and superficial interaction with the public, and only occasional interaction with coworkers.

Admin. Rec. at 20; Dkt. No. 16. Having determined Claimant is unable to do any of her past relevant work, at Step 5 the ALJ determined Claimant could perform work that existed in the national economy and identified three occupations suited to Claimant's abilities, representing 334,000 jobs in the national economy. The ALJ accordingly denied Claimant's application. *Id.* at 26. Claimant now appeals that denial to this Court. Pl. Mem. at 2; Dkt. No. 20.

## II.    Standard of Review

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under Social Security regulations, disability means that the impairment(s) is/are so severe that the claimant is not only unable to engage in previous work but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A). The claimant bears the burden of proving

entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a)(1); *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (sentence four). The Court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole and is not based on legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). Substantial evidence is "less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quotation and alteration omitted). The Court "must consider evidence that supports and detracts from the ALJ's decision." *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (quotation omitted).

As part of reviewing the record, the ALJ will consider medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. ALJs are not required to give any specific level of deference to those opinions and instead must assess those opinions' persuasiveness. *Id.* at (b). The most important factors in determining persuasiveness are supportability and consistency. Supportability means that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support" the opinion, the more persuasive that opinion is. *Id.* at (b)(3)(c)(1). Similarly, the more consistent the opinion is with evidence from other sources, both medical and nonmedical, the more persuasive the opinion is. *Id.* at (b)(3)(c)(2). ALJs may also (but are

4

not required to) consider the provider's relationship with the claimant, the provider's specialization, and other factors. *Id.* at (b)(3)(c)(3-5).

Claimant argues the ALJ improperly analyzed the supportability of medical opinions provided by Juan Pablo Galindo, D.O. and Donald E. Wiger, PhD. According to Claimant, ALJ Burstein failed to consider the support Drs. Galindo and Wiger cited in their opinions, and her discounting of their opinions was therefore error. Pl. Mem. at 6; Dkt. No. 20. In addition, Claimant argues the ALJ's RFC determination does not accurately reflect prior administrative medical findings, which the ALJ found persuasive. *Id.* at 13. Having failed to fully incorporate those findings in the RFC, Claimant contends, the ALJ's RFC was erroneous. *Id.*

## ANALYSIS

### I. ALJ's Supportability Analysis

#### A. Dr. Galindo

Claimant contends the ALJ erred in her assessment of the supportability of her treating psychiatrist, Dr. Galindo's, medical opinion. Supportability means that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support" the opinion, the more persuasive that opinion is. 20 C.F.R. § 404.1520c(b)(3)(c)(1). Dr. Galindo noted a treating relationship with the Claimant lasting over three years, with visits at least every three months. *Id.* at 31. At the time of his medical opinion, he opined that Claimant faced marked limitations in understanding, remembering, and applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. He characterized her mental disorder as "serious and persistent." Admin Rec. at 32; Dkt.

No. 16-8. He further cited labile mood, tearfulness, high anxiety, paranoia, irritability, and poor concentration. *Id.*

The ALJ found Dr. Galindo's opinion unpersuasive in part because it was not supported by his own treatment notes. Admin. Rec. at 24; Dkt. No. 16. She explained that while Dr. Galindo noted troubling mental health condition in his opinion, he had previously found Claimant "well-groomed, cooperative, calm, with normal memory, and normal attention and concentration." *Id.* Claimant contends, however, that the ALJ "selectively recit[ed] the record," while ignoring the information Dr. Galindo provided in his opinion. Pl. Mem. at 8; Dkt. No. 20. She further points out evidence in the record that supports Dr. Galindo's opinion and suggests the ALJ erred by putting too much weight on Dr. Galindo's comments about Claimant's groomed appearance. *Id.* at 9.

Claimant's argument fails. The ALJ's assessment of the supportability of Dr. Galindo's opinion was proper. While the ALJ does cite Claimant's personal grooming in her supportability analysis, she also explained that Dr. Galindo had found Claimant depressed, anxious, labile, and irritable *at times*, indicating there were other times when he did *not* find Claimant depressed, anxious, labile or irritable. Admin. Rec. at 16; Dkt. No. 24. Indeed, the ALJ's opinion also recounts Dr. Galindo's earlier findings including: February 2019: euthymic mood, normal affect, no suicidal or homicidal ideation; May 2019: unremarkable findings, no change to medication or therapy schedule. *Id.* at 21-23; *see also id.* at 1362; 1366.[1] Other times, the ALJ explained Dr. Galindo's exams found the Claimant in a different state: January 2020: depressed, irritable, dysmorphic, but no

---

[1] Dr. Galindo noted euthymic mood, normal affect, and otherwise unnoteworthy findings at other exams as well, including in August 2019 and November 2019. Admin. Rec. at 1370, 1375; Dkt. No. 16.

6

suicidal or homicidal ideation. *Id.* at 22, 2249. And by the next month, a change to Claimant's medication appeared to have improved her status, Dr. Galindo having found her euthymic with normal affect. *Id.* at 22, 2254. While the ALJ's written explanation of her supportability finding was brief, the entirety of her opinion demonstrates why she found Dr. Galindo's opinion unpersuasive based on the supportability factor. While another ALJ could find Dr. Galindo's opinions sufficiently supported to be persuasive, there is substantial evidence in the record suggesting the opposite, and the ALJ did not err in reaching that conclusion. *See Chismarich*, 888 F.3d at 978.

### B.   Dr. Wiger

Claimant makes a similar argument about the ALJ's assessment of Dr. Wiger's medical opinion. Pl. Mem. at 10-12; Dkt. No. 20. Dr. Wiger performed a consultative examination in February 2020 but does not appear to have a treating relationship with Claimant.[2] Claimant contends the ALJ's "condensed summary of Dr. Wiger's consultative examination does not properly illustrate the extent of Dr. Wiger's findings." *Id.* at 10. On exam, Dr. Wiger noted the Claimant was well groomed, cooperative, attentive, and interested in the exam. Admin. Rec. at 1440; Dkt. No. 16. He noted normal affect and summarized Claimant's own descriptions of her mood as "OK" but "tired." *Id.* at 1441. He found no evidence of personality disorder. *Id.* In reaching his conclusion, he reviewed Claimant's records, "noting a [history] of hospitalizations" for mental health problems. *Id.* at 1440. He concluded that Claimant "is able to relate appropriately with at least brief and superficial to others [sic], but has trust issues. She is not able to handle the emotional

---

[2] The Administrative Record does contain medical records from February 2017 that list a Donald E. Wiger, II, MD as treating Claimant. Admin. Rec. at 451-58; Dkt. No. 16. This appears to be a different person from Donald E. Wiger, PhD and neither the parties in their briefs nor Wiger PhD in his opinion have cited Wiger MD's records.

stressors of at least entry-level workplace at this time, but improvements are noted." *Id.* at 1443.

The ALJ found Dr. Wiger's opinion unpersuasive in part because it was not supported by the rationale cited in the opinion itself. *Id.* at 23. For example, Dr. Wiger based his opinion on Claimant's reports of depression and tiredness, but made "mostly normal findings" upon examination. *Id.* at 23, 1440-1443. The ALJ specifically identified information from Dr. Wiger's consultation record that did not support his ultimate conclusion, then succinctly stated the opinion was unpersuasive for lack of support. That the ALJ's discussion of the supportability factor is brief does not itself determine whether she properly addressed that factor. *Cf.* 20 C.F.R. § 404.1520c(2) ("[W]e will explain how we considered the supportability and consistency factors. . . .).

Furthermore, while Dr. Wiger explained that he relied on "[r]ecords available to" him, it is unclear which specific records he was referencing. While Claimant is correct that there is evidence in the record that supports Dr. Wiger's opinion (Pl. Mem. at 10-12; Dkt. No. 20), there is also substantial evidence that belies that opinion. *See* Admin. Rec. at 23; Dkt. No. 16 (explaining Dr. Wiger's varied findings since 2017). The ALJ did not err by discounting Dr. Wiger's opinion based on the supportability factor.

## II. Prior Administrative Medical Findings

Claimant also contends the ALJ erred by failing to properly account for medical opinions she found persuasive when determining Claimant's RFC. Pl. Mem. at 13; Dkt. No. 20. Here, Claimant argues the RFC is inconsistent with opinions from state agency psychologists. Specifically, Claimant notes the state agency psychologists, Drs. Hill and Kachgal, found Claimant able to "relate to coworkers and supervisors on a superficial and

8

ongoing basis."³ Pl. Mem. at 14; Admin. Rec. at 136; Dkt. No. 16. Yet the ALJ 's RFC allowed for "brief and superficial interaction with the public, and only occasional interaction with coworkers." Admin. Rec. at 20; Dkt. No. 16. Claimant argues these characterizations of Claimant's social limitations conflict with each other. *Id.* She further objects because the RFC did not address limitations related to Claimant's ability to interact with supervisors specifically.

At bottom, Claimant contends the RFC was erroneous. While the RFC is a "medical question," the ALJ considers "all relevant evidence in [the] case record" to determine the RFC. 20 C.F.R. § 416.945(a). The ALJ need only cite "some medical evidence" in reaching her determination. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Here, the ALJ has cited both non-medical and medical evidence, including the state agency psychologists' findings, to reach her determination and the RFC was not erroneous.

First, the ALJ's RFC limited Claimant to "only occasional interaction with coworkers," while the state agency psychologists limited her to "superficial and ongoing" interactions with coworkers and supervisors." Admin Rec. at 20, 136; Dkt. No. 16. Thus, the ALJ's finding is *more* limited than the state agency psychologists' finding as regards the frequency of interaction. Under Social Security guidance, "occasional" interaction would occur "up to one-third of an 8-hour workday." 20 C.F.R. § 404.1567(a); *see also* SSR 83-10; Social Security Program Ops Manual Sys., TN 17,

---

³ In addition, Claimant takes issue with the ALJ's statement that the psychological consultants' medical opinions included "no limitations . . . in social interaction" despite the psychologists' findings. Pl. Mem. at 14; Dkt. No. 20 ("The ALJ determined that the state agency psychologists found no limitations in social interaction.") This argument is largely irrelevant for the reasons cited below, namely that the ALJ's social interactions finding was more limited that those of the state agency psychologists.

https://secure.ssa.gov/poms.nsf/lnx/0425001001. "Ongoing" interaction would be "continuing." *Ongoing*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ongoing. In looking at the whole record, the ALJ thus provided for more limited contact with coworkers than the state agency psychologists had, limiting her interaction to only 1/3 of any given workday.

In addition, the RFC and the prior administrative medical finding do not necessarily conflict, as Claimant could interact with coworkers only occasionally, i.e. only 1/3 of the day or less, but also do so on an ongoing basis, e.g. daily. In addressing alleged conflict, the Court avoids "labeling findings as inconsistent if they can be harmonized." *Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022) (internal citations omitted). Where inconsistencies can be harmonized, there is no error. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). Moreover, any inconsistency between the state agency findings and the RFC is not in and of itself a problem, as the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those of your medical sources." 20 C.F.R. § 404.152c(a). That ALJ Burstein found the state agency psychologists' findings persuasive does not thereby require her to defer to them in toto. Instead, in assessing RFC the ALJ considers "all relevant evidence in your case record." 20 C.F.R. 416.945(a).

All the same is true in assessing the quality of the interaction of which Claimant is capable. The RFC did not limit Claimant to only superficial interaction with co-workers, while the state agency psychologists suggested that limitation. Because the ALJ found the state psychologists' opinions persuasive, Claimant contends that the ALJ should have

10

limited her to only superficial interaction, as did those psychologists. Pl. Mem. at 14; Dkt. No. 20. Again, the ALJ is not required to defer to any medical opinion, regardless of who provided it, or how persuasive it is. 20 C.F.R. § 404.152c(a). The ALJ did not err by omitting a qualitative limitation on Claimant's ability to interact with others.

Next, Claimant's allegation that the ALJ did not consider the state agency psychologists' opinions in reaching her RFC is belied by the ALJ's decision itself. The ALJ detailed the psychologists' conclusions and explained her reliance on them:

> DDS psychological consultants offered medical opinions on initial review and reconsideration concluding that the claimant would have moderate limitations in concentration, persistence, and pace, as well as adaptive functioning, but no limitations in her understanding, remembering, or applying information or in social interaction. While the claimant would also require moderate social limitations, the DDS opinion was mostly supported by the evidence cited in the rational[e] and consistent with the evidence of the record as a whole. The claimant has been found to be depressed/irritable, labile, and anxious at times during psychiatric examination. She also has a history of substance abuse. In addition, claimant testified that she gets paranoid around others and that she has severe fatigue. However, the claimant has routinely been found to have normal cognitive functioning and demonstrated mostly normal findings upon consultative exam. Lastly, as indicated above, the claimant has endorsed being able to complete a wide range of activities of daily living.

Admin Rec. at 24; Dkt. No. 16.

Claimant also contends the ALJ erred because her RFC did not include a specific finding about Claimant's ability to interact with supervisors. As already addressed, the ALJ is not required to defer to any medical opinion and thus need not include such a finding simply because the state agency psychologists did. Nor do the regulations require the ALJ to specify a Claimant's capacity to interact with supervisors. Instead, the ALJ must consider all the evidence and establish a logical bridge between the evidence and the RFC. *E.g., Daniel v. Massanari*, 167 F. Supp. 2d. 1090, 1093 (D. Neb. 2001). The

ALJ has done so here. She explained the Claimant has moderate limitation in interacting with others, citing her depressed mood, irritability and dysphoria, as well as her ability to socialize with others, attend church, social groups, and group therapy. Admin. Rec. at 19; Dkt. No. 16. The ALJ supported her finding with citations to the Adult Function Report, various psychiatric evaluations, consultative examinations, and with the state agency psychologists' findings. *Id.* at 19-20, 23, 24. The ALJ thus adequately connected the evidence in the record to her determination.[4] The alleged failure to properly weigh the state agency psychologists' opinion was not error. In total, the ALJ's determination was supported by substantial evidence and the Court recommends that ALJ's decision be affirmed.

## RECOMMENDATION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, the Court RECOMMENDS THAT:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 19) be **DENIED.**

2. Defendant's Motion for Summary Judgment (Dkt. No. 21) be **GRANTED**.


Dated: April 4, 2023            ___s/David T. Schultz_____
                                DAVID T. SCHULTZ
                                U.S. Magistrate Judge

---

[4] Again, the Court notes that in general, where inconsistencies can be harmonized, there is no error. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). Here, the RFC does not explicitly account for supervisors, however its discussion of co-workers could easily encompass supervisors, resolving any alleged dissonance in the record. *See id.*, *Jones v. Kijakazi*, No. 21-00608-CV, 2022 WL 1421956, at *2 (W.D. Mo. May 5, 2022) ("[S]upervisors are co-workers, so the RFC limitation restricting Plaintiff's interactions with co-workers also applies to supervisors.").

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).